**In re Anonymous No. 49 D.B. 77**

Disciplinary Board Docket no. 49 D.B. 77.

To The Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

PEARLSTINE, *Member,* November 3, 1981 — Pursuant to Pa.R.D.E. 218(c)(5), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

[ ] petitioner, filed a petition for reinstatement and reinstatement questionnaire on October 9, 1980 and the matter was referred to hearing committee no. [ ].

The hearing was held on February 25, 1981 and on July 2, 1981 the hearing committee filed its report recommending that the reinstatement petition be granted. On July 23, 1981, the Office of Disciplinary Counsel filed its brief on exceptions to the report of the hearing committee and requested oral argument. On August 11, 1981, petitioner's brief contra the brief on exceptions referred to as "Appeal" of Disciplinary Counsel was filed.

On August 28, 1981, the chairman designated a panel consisting of Raymond Pearlstine, Chairman, Mary Bell Hammerman and John M. Elliott, who heard oral argument at the offices of the board in Norristown, Pa. on September 15, 1981. [A], Esq., appeared in behalf of petitioner.

At oral argument the Office of Disciplinary

Counsel submitted a motion to strike petitioner's brief, which was argued in limine. The panel determined that the brief would not be stricken in its entirety, but that Sections III, IV and V of the brief be stricken.

Argument Section III states that Disciplinary Counsel's failure to freely disclose to petitioner and the hearing panel the exculpatory evidence in his own file as a result of his own investigation is a constitutional and ethical violation of the highest magnitude. This accusation is buttressed by a statement on page 11 of the brief that:

"Some matters have given [Petitioner] reason to believe the undercover surveillance of [Petitioner's] activities was conducted by persons in the employ of the Disciplinary Board or by attorneys involved in private practice, who were in fact commissioned by the Disciplinary Board to investigate [Petitioner]."

This accusation was unsupported by any evidence whatsoever and petitioner's brief admitted (p. 11) that there was "no hard proof of that can be obtained." [A] offered to withdraw this "suggestion." His offer was denied by the panel, determining to rule on the motion.

Argument Section IV accused the Disciplinary Counsel of dilatory tactics in requesting an oral argument, accusing the Office of Disciplinary Counsel of violating the Disciplinary Code and that the hearing was not held within 45 days under Rule 218(c)(2).

As was pointed out by Disciplinary Counsel, the accusation was a gross error of law and a misstatement of the rule which applies only to reinstatement proceedings which have been joined with a proceeding bringing disciplinary charges

against an attorney and has no application to a reinstatement petition standing alone.

The accusation further accused the Disciplinary Counsel of being responsible for the scheduling and holding of hearings and that the reinstatement hearing was held six months after August 1, 1980, when petitioner could have filed his petition. As a matter of fact, the petition was not filed until October of 1980 and referred to the hearing committee on October 10, 1980, the hearing being scheduled by the hearing committee and held on February 25, 1981.

Petitioner asserts (p. 15 of his brief) that "the request for oral argument is a dilatory tactic." This accusation is absolutely unfounded. This argument overlooks the fact that either party to any Disciplinary Board proceeding has the right to request oral argument. The briefs of the parties set forth serious issues of law and fact in the instant matter and the board welcomes opportunities to hear oral argument under such circumstances.

Argument V is merely a conclusion reiterating the previous arguments and expresses puzzlement at the "frenetic resistance offered to the Reinstatement Petition." The conclusion again refers to exculpatory evidence suppressed by the Disciplinary Counsel and also should be stricken.

After the disposition of the motion, argument was presented by [A] on the merits of the petition and response was made by [ ] Esq., Assistant Disciplinary Counsel, in behalf of the office of Disciplinary Counsel.

## II. DISCUSSION

Review of the record reveals that petitioner, 46 years of age, having practiced law for 20 years, was suspended for one year by the Supreme Court of

Pennsylvania on August 22, 1979. Approximately five months prior thereto, in April of 1979, the practice with [B] was terminated. Because of the fact that he sold his practice prior to the suspension order he was not required to notify clients of his suspension, since the sale was in anticipation of discipline.

The Disciplinary Counsel argued that petitioner has not shown that he has been rehabilitated and he should not be reinstated in the practice of the law because he lacked "moral qualifications" and that his conduct indicated that it was incompatible with the standards to be observed by members of the Bar in this Commonwealth.

This position is based upon Argument II of [Disciplinary Counsel] that during the period of [Petitioner's] suspension from the practice of law, he continued to engage in misrepresentations and deceitful conduct in general of the same type of conduct which led to his suspension from practice, thus indicating that he has not been rehabilitated and should not be reinstated.

Petitioner was originally indicted for filing a false Federal Personal Income Tax Return and subsequent to that filing lying to the agents of the Internal Revenue Service about an item of income which should have been included on his return, but which was not (a fee of $34,000, which was the largest fee the petitioner ever received.) Testimony was adduced before the hearing committee that petitioner, in dealing with the Pennsylvania Bureau of Vocational Rehabilitation, failed to disclose fully and forthrightly all of the reasons that he was not practicing. On or about October 1, 1980, petitioner began work in an enterprise known as [C], an organization which was established with a subgrant of Federal funds from BVR (Bureau of Vocational Rehabilitation) and this lack of forth-

rightness was contained in a letter dated October 9, 1979, after his suspension by the Supreme Court of Pennsylvania, which letter stated that a physical disability which he incurred in a serious automobile accident in May of 1977 precluded him from conducting a full-time legal practice and that accordingly he dissolved his law partnership as of April of 1979.

On August 19, 1980, petitioner represented to [D] of BVR, that:

"I sold out my practice to my partner . . . in April of 1979 because . . . my *medical reports indicated* that I could not pursue on a full-time basis the work load that I carried for 14 years."

This letter was written three days before the expiration of the one year suspension period imposed upon him on August 22, 1979. He was subsequently asked whether he was disbarred, whereupon petitioner answered that he was not disbarred, which statement was technically correct, but he did not disclose his true status. In January of 1980, [D] again asked specifically whether he was suspended and he avoided answering this question. On October 9, 1980, petitioner filed his reinstatement questionnaire and in Answer 20 he stated:

"In order to scrupulously avoid even the appearance of impropriety, I left [my office] five months before my suspension, terminating my relationship with all clients of the office."

And again in answer to question 21:

"I have scrupulously adhered to the letter and spirit of discipline . . . by actually leaving [my office] months in advance of discipline."

The Disciplinary Counsel concludes that honesty is required on petitioner's part, particularly when

specific inquiry is made as to his status and that his avoidance and denial and presentation of a different reason for his failure to practice law even though it was not required that he be a lawyer in order to carry on the BVR program and that this constituted a pattern of misrepresentation and deceitful conduct and that therefore petitioner has not met the standard of honesty required of a petitioner for reinstatement.

The hearing committee in its report acknowledged that petitioner had a very difficult burden under Rule 218, but that burden has been fairly met, concluding that petitioner had the moral qualifications required for admission to practice law in this state and that he had the competency and learning in the law required for admission to practice law and that the resumption of practice by petitioner would be neither detrimental to the integrity and standing of the Bar or to the administration of justice nor subversive of the public interest. The hearing committee met the issue in a straightforward manner and concluded that his failure to disclose the fact of his suspension to [D] and others, did not show a deficiency of moral character so that petitioner's request for reinstatement should be denied. While agreeing that his conduct was less than forthright, it was felt that the circumstances were extenuating and that there was no overt untruth, but rather a failure to explain fully the reason that petitioner was no longer engaged in practice.

The findings of fact of the hearing committee were not contested, but the conclusions were vigorously opposed by Disciplinary Counsel in a very thorough brief presented to the board. The hearing committee recommended approval of the petition for reinstatement. After oral argument, the panel was unanimous in recommending affirmance of

the hearing committee's recommendation and that recommendation was submitted to the Disciplinary Board at its meeting on September 18, 1981. After thorough discussion and review of the record, the board voting eight votes in favor of reinstatement and one vote against reinstatement, makes the following

## III. RECOMMENDATION

For the reasons set forth above, the Disciplinary Board recommends to your honorable court that the said [Petitioner] be reinstated to the practice of law in Pennsylvania, pursuant to Pa.R.D.E. 218 upon payment of the necessary expenses incurred in the investigation and processing of the petition as set forth pursuant to Rule 218(e).

Mary Bell Hammerman would deny the petition for reinstatement.

Messrs. Johnson and Daniels did not participate in the adjudication.

## ORDER

O'BRIEN, *C.J.*, And now, December 10, 1981, the recommendation of the Disciplinary Board dated November 3, 1981, is accepted and the petition for reinstatement is granted.

The expenses incurred by the board in the investigation and processing of the petition for reinstatement shall be paid by petitioner.